MICHAEL B. KUSHNER (State Bar No. 196224)
SUREN N. WEERASURIYA (278521)
PAUL H. DEESE (State Bar No. 301328)
Kushner Carlson
A Professional Law Corporation
85 Enterprise, Suite 310
Aliso Viejo, CA 92656
Telephone: (949) 421-3030
Telecopier: (949) 421-3031
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JUSTIN REZVANI, individually, and derivatively on behalf of REACH LABS, INC. dba THEAMPLIFY, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID JONES, an individual; YOU & MR. JONES, INC., a Delaware corporation; REACH LABS, INC. dba THEAMPLIFY, a Delaware Corporation, and DOES 1 to 10, Inclusive,<br><br>Defendants. | **Case No. 2:18-cv-06244-CAS-E**<br><br>**Honorable Christina A. Snyder**<br><br>**VERIFIED FIRST AMENDED COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## THE PARTIES

**1.** Plaintiff the Reach Labs dba theAmplify ("theAmplify") is a California Corporation. It is an influencer marketing platform which creates large-scale native advertising campaigns for brands. After its founding in 2013, theAmplify exploded to a daily reach of over 500 million people by the end of 2015.

**2.** Plaintiff Justin Rezvani is a natural person residing in Los Angeles County, California. He owns 45.85% of theAmplify.

**3.** David Jones is a natural person and the owner of Defendant You & Mr. Jones, Inc. ("YoJo").

**4.** YoJo is a Delaware Corporation. It owns 51% of theAmplify and is a brand technology company that Jones founded in 2015. YoJo's headquarters are in New York.

**5.** Rezvani owns 45.85% of theAmplify, and YoJo owns 51% of the theAmplify.

**6.** Jones, Antoni, and Rezvani comprise theAmplify's Board of Directors ("the Boards").

## JURISDICTION AND VENUE

**7.** The Court has subject matter jurisdiction over Plaintiffs' cause of action for Jones and YoJo's violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. §§78j(b) and 17 C.F.R. §240.10b-5 (the "Securities Fraud Claim"), under 18 U.S.C. §1331 and 15 U.S.C. §78aa. The Court has supplemental jurisdiction over Plaintiffs' other claims because they arise from the same controversy and transactions as the Securities Fraud Claim.

**8.** The Court has personal jurisdiction over Defendants because they have each purposefully available themselves of the laws of California.

/ / /

/ / /

**9.** Venue is proper in the United State District Court for the Central District of California because it is the judicial district in which a substantial part of the events and omissions causing Plaintiffs' claims occurred.

**10.** Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## FUTILITY OF DEMAND

**11.** Plaintiffs were not (and are not) obligated to make a demand upon Defendants because doing so would have been (and is) futile. Defendants have engaged in substantial wrongful conduct, self-dealing, and breaches of fiduciary duty so Defendants have exposed themselves (and, unfortunately, theAmplify) to absolute liability to Plaintiffs, and other shareholders of theAmplify.

**12.** Because Defendants will not admit to taking such wrongful actions, and because Defendants have repeatedly tried to justify their wrongful conduct, Defendants have effectively deprived theAmplify of the internal controls and systems for limited liability company management compliance to help detect, deter, and prevent the improper wrongful conduct.

**13.** Defendants face a substantial risk of liability for breach of the duties of care, good faith, and loyalty, and cannot evaluate a pre-suit demand fairly and objectively. A demand on Defendants is futile, and that obligation is excused.

**14.** This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

## BACKGROUND ALLEGATIONS

### theAmplify Immediately Succeeds After Its Launch

**15.** In 2013, Rezvani founded theAmplify, a leading technology and data-driven influencer marketing service for social media companies such as Instagram, Snapchat, Facebook, and Twitter. Rezvani developed a proprietary algorithm owned by

theAmplify called SharedRank™, which measures and discovers audiences on social media. Because of theAmplify's success, Rezvani obtained the Forbes 30 under 30 distinction in 2017.

**16.** In late 2015, Rezvani met Jones, who promised him even wilder success if Rezvani would grant YoJo 51% of the shares and majority control of theAmplify. Jones promised Rezvani revenues of $100,000,000.00 annually for theAmplify and profits of more than $30,000,000.00 for Rezvani.

**Jones Convinces Rezvani That He Will Grow theAmplify**

**17.** On or about August 6, 2015, Rezvani had a telephone call with Jones. In that conversation, Jones told Rezvani he was building YoJo into a large company that blended marketing and technology. Rezvani shared his vision for theAmplify. Rezvani owned over 98% of theAmplify and had projected to earn approximately $5 million in revenue and $1.2 million in profit for 2015.

**18.** On or about September 22, 2015, Rezvani and Jones had their first in-person meet at theAmplify's office in Culver City. During that meeting, Rezvani presented Jones with the details of the platform. Jones told Rezvani he could help grow theAmplify's revenues to $100 million annually.

**19.** Jones promised Rezvani he would bring expertise to theAmplify in marketing, public relations, operations, and finance. Rezvani was impressed by — and relied on — Jones' representation about the projected the $100 million in annual revenue and his promise of bringing significant improvements in marketing, public relations, operations, and finance to theAmplify.

**20.** At the September 22, 2015, meeting, Jones also told Rezvani about a new unit at YoJo called "Blood," which would be run by George Prest and Drew Burdon, highly experienced advertising professionals. He claimed that Blood was a hub at YoJo bringing brands into the YoJo family to introduce to, and work with, YoJo-affiliated businesses. Jones' representation was attractive to Rezvani because he was eager to

partner with an individual or entity that could help generate significant client leads and make client introductions.

**21.** On or about October 6, 2015, Rezvani attended a meeting of advertising executives at Jones' invitation. After the meeting, Jones met with Rezvani and told him that Jones could get Rezvani into similar conferences and help introduce Rezvani to dozens of brands overnight.

**22.** In late October of 2015, negotiations began for YoJo's purchase of a controlling interest in theAmplify from Rezvani. Rezvani sent Jones a business valuation document which valued theAmplify at $42 million. In response, Jones told Rezvani repeatedly that theAmplify was worth $30 million.

**23.** On or about October 28, 2015, Jones and Rezvani had a telephone conversation in which they discussed a deal structure for YoJo's purchase of 51% of theAmplify. Under the deal structure Jones proposed, YoJo would pay Rezvani for his shares half upfront, and the rest as "earnout payments" from 2016 to 2018 — based on theAmplify's financial results in 2016, 2017, and 2018.

**24.** Jones also assured Rezvani that Rezvani would meet his maximum potential earnouts in 2016, 2017, and 2018 with support from Jones and YoJo. Jones continued to reiterate that he had deep relationships with the world's largest brands and could provide Rezvani with significant help in growing theAmplify.

**25.** During their call Jones told Rezvani he would give theAmplify considerable support to ensure that Rezvani would earn more than the $5,610,000 down payment. Jones specifically told Rezvani:

> Finally, as I said, I have no doubt you can get potentially more money for your company in the short-term, [but] our model is one of long-term partnership where if we deliver what I think we are capable of together (and with points 2.4 and 3) you can earn dramatically more than $30,000,000.

**26.** Rezvani also proposed seeking a partner to raise more capital for theAmplify at the $30 million valuation. In response, Jones informed Rezvani he would not receive the support that Jones would offer Rezvani if Rezvani sought another partner to raise capital. Jones told Rezvani he would only provide substantial support to companies that YoJo majority-owned. Jones also told Rezvani that YoJo's minority-owned companies did not include the high-level support that majority-owned businesses received.

**27.** On or about November 11, 2015, Rezvani, Antoni, and Andre Pinto, a Mergers and Acquisitions Specialist for YoJo, met and agreed on a $30 million valuation for theAmplify along with some general terms. The sale of Rezvani's 51% equity interest in theAmplify valued at $15,300,000 based on the $30 million valuation.

**28.** The purchase was structured so Rezvani would receive a down payment of $7,650,000 and earn-out payments of up to $7,650,000 based on theAmplify's profits for 2016, 2017 and 2018. That day, Antoni emailed Rezvani these deal terms, stating, "[w]e are very excited and proud to become a partner of TheAmplify and yourself and to be able to contribute to the success of our common venture."

**29.** Later that evening, Rezvani met with Jones. Jones told Rezvani he would help Rezvani grow theAmplify to a tremendous level and help him with all aspects of theAmplify's business.

**<u>The Parties Negotiate for Rezvani To Sell Shares In theAmplify To YoJo</u>**

**30.** On or about December 16, 2015, Rezvani signed a letter of intent to sell a 51% equity interest in theAmplify to YoJo.

**31.** On January 22, 2016, Rezvani met with Jones in New York City to discuss the sale. Jones reiterated his promises he would be helping Rezvani in critical areas of the business, introducing him to brand representatives, and supplying internal operational support for theAmplify. He also reiterated that YoJo's Blood systems

would be a cornerstone for generating significant client leads and making client introductions. Jones' representation about the Blood system was essential to Rezvani.

**32.** By early April of 2016, the due diligence process was almost completed. Rezvani had developed sales projections for theAmplify based on Jones' promises to Rezvani about the support systems he and YoJo could provide theAmplify.

**33.** On April 8, 2016, Jones called Rezvani and told him that once he was part of theAmplify, Jones would use his relationships with the world's largest brands, including Reckitt Benckiser Group and PepsiCo, to generate business for theAmplify.

**34.** Before selling a 51% interest in theAmplify — and as a condition precedent to it — Rezvani told Jones he wanted to keep control of theAmplify's material business decisions and day-to-day operations. To induce Rezvani to sell a 51% interest in theAmplify, Jones repeatedly promised Rezvani that Rezvani would continue to have control over the theAmplify's material business decisions.

**35.** Jones drafted an Employment Agreement for Rezvani's continued employment as theAmplify's CEO, a Shareholder Agreement, and a Stock Purchase Agreement reflecting the sale of 51% of theAmplify from Rezvani to Jones.

**<u>Rezvani Sells His Majority Shares to YoJo Relying on Jones' Representations</u>**

**36.** On or about April 25, 2016 — relying on Jones' promises and representations about theAmplify's success — Rezvani entered several new agreements relating to his ownership of, and employment with, theAmplify:

a. the Employment Agreement for his position as CEO of theAmplify (the "Employment Agreement"), a true copy of which is attached to this First Amended Complaint as "Exhibit A;"

b. the Stock Purchase Agreement (the "SPA") for the sale of 51% of theAmplify from Rezvani to Jones, a true copy of which is attached to this First Amended Complaint as "Exhibit B;" and

c. a Shareholder Agreement (the "Shareholder Agreement") memorializing the parties' rights and obligations as Directors, Officers, and Shareholders of theAmplify, a true copy of which is attached to this First Amended Complaint as "Exhibit C."[1]

**37.** In the Shareholder Agreement and Employment Agreement, the Rezvani and Jones agreed that theAmplify's Board of Directors needed Rezvani's consent for: (1) "hiring of any employee with an annual salary of $80,000 or more;" (2) "a change in the dividend policy from the policy of a 100% annual distribution;" (3) "the approval of material changes to the annual budget and business plan of the Company that imply a variation of the business lines and or of the business model of the Company;" and (4) "any transaction … potentially requiring or requiring the expenditure of more than $5,000 by and between Company, a Stockholder or any Seller …"

**38.** The Shareholder Agreement purported to keep the power in Rezvani's hand — but gave true power over critical decisions to YoJo and Jones.

**__Jones Presents Rezvani with an Unconscionable Shareholder Agreement__**

**39.** The Shareholder Agreement Jones prepared states:

a. Under Section 1.1, that the Board of Directors would include three seats: two for individuals appointed by YoJo, and one for an individual picked by Rezvani. The first Board Members were Jones, Antoni, and Rezvani.

b. Under Section 1.3, a majority of the Board directors shall constitute a quorum, provided that such majority is comprised of Rezvani or his designee;

**40.** Under Section 1.6, that "[t]he business and affairs of the Company shall be managed by or under the direction of the Board," which included Rezvani;

**41.** By entering the Agreements — solely because he reasonably believed the promises Jones made him — Rezvani inadvertently gave up control of theAmplify. The

[1] The Verified First Amended Complaint refers to these agreements collectively as "the Agreements."

one-sided Agreements gave YoJo 2 of 3 the seats on the Board, and 51% of the equity interest in theAmplify.

**42.** Notably, the SPA gave Rezvani $7,650,000.00 upfront and the rest of the $7,650,000.00 via "earn-outs" in 2016, 2017, and 2018 — *if* theAmplify hit certain profit benchmarks.[2]

**Jones Destroy theAmplify's Value**

**43.** In the next two years, Jones and YoJo degraded theAmplify for their self-interests, withdrawing cash from theAmplify and increasing spending. Jones overspent to lower theAmplify's profit, to minimize Rezvani's subsequent "earn-out" payments.

**44.** Jones and YoJo also invested in direct competitors of theAmplify, acquiring equity stakes in companies like Tribe Dynamics and Trackkr. Through these investments, Jones and YoJo hurt theAmplify's sales — putting their interests ahead of theAmplify's best interests.

**45.** Immediately after YoJo's purchase of a controlling interest in theAmplify, Jones also stopped showing up to theAmplify meetings and showed little interest in the company — but continued dismantling Rezvani' work, and influence in theAmplify.

**Jones Exerts Control Over theAmplify and Diminishes Rezvani's Role**

**46.** After buying a 51% interest in theAmplify, YoJo removed theAmplify's accountant, Mike Taylor.

**47.** Rezvani is informed and believes, that in or around July of 2017, YoJo bought a substantial equity interest in Tribe Dynamics ("Tribe Dynamics"), an influencer data platform that ties "earned media" press coverage or other content placements not paid for by the advertiser, to sales.

/ / /

[2] The "earn-outs" were to be paid in certain percentages to Rezvani (40%) and the other two members that sold their interest in the transaction which totaled 51%, including Rezvani's father. This percentage of earn-outs to be paid directly to Rezvani is about 78.4%.

**48.** Tribe Dynamics is a direct competitor of theAmplify. Both are influencer platforms, and YoJo's investment in Tribe Dynamics cannibalized theAmplify's sales and profits.

**49.** Rezvani is informed and believes, that despite Jones's representations to Rezvani, to date, the Blood Hub has not helped theAmplify bring in new clients.

**50.** In 2016, theAmplify generated approximately $4,670,000 million in revenue and $177,000 in profit.

**51.** In June of 2017, after not receiving a dividend payment, Rezvani emailed Andre Pinto, Jean-Marc Antoni, and David Jones, inquiring about the timing for his 2016 dividend payment. Pinto responded with the excuse that theAmplify was dealing with new attorneys.

**52.** In August of 2017, Rezvani again wrote to Pinto and requested his 2016 dividend payment. Pinto continued to provide Rezvani with a range of excuses for not processing the dividend payment.

**53.** In 2017, theAmplify generated approximately $5.7 million in revenue and $700,000 in profit. To date, Rezvani has only recently received roughly $80,000 for 2016 — and nothing for 2017.

**54.** While marginalizing Rezvani, Jones kept stringing him along. On June 18, 2017, Jones emailed Rezvani and highlighted his satisfaction with Rezvani's marketing abilities, stating: "I think we should also discuss making sure you are at the key brand sales meetings as no-one sells theAmplify like you."

**55.** In July of 2017, Jones had an in-person meeting with Rezvani in Santa Monica, California, where Jones informed Rezvani that their business relationship would work one of three ways, Rezvain could: (i) be a good soldier, (ii) work a few days a week at theAmplify; or (iii) leave his employment theAmplify.

**56.** Jones also told Rezvani he would no longer provide Rezvani with any more client introductions.

**57.** Throughout 2016 and 2017, Rezvani's work responsibilities at theAmplify had continuously increased, and he was not receiving the expected help that Jones had promised him before YoJo purchased 51% of theAmplify.

**58.** Rezvani's workload increased significantly because of YoJo's acquisition of a majority stake in theAmplify. In March 2017, Rezvani began suffering from anxiety.

**Jones Terminates Rezvani As CEO After Rezvani Returns from Disability Leave**

**59.** On November 1, 2017, Rezvani had a telephone conversation with Jones in which Rezvani disclosed that he was very anxious about losing a key client, Axe, and was seeing a therapist for work-related anxiety. Jones told Rezvani he was worried about Rezvani and that Rezvani needed to take two to three weeks off. Rezvani took time off work to cope with his stress and anxiety.

**60.** Rezvani treated for emotional distress and anxiety during his time off ("Disability Leave")

**61.** On November 21, 2017, Rezvani returned from Disability Leave. That day, he flew to Slovenia on company business. On November 25, 2017, he flew back to Los Angeles. On November 28, 2017, he had a weekly business call scheduled with Jones. When Rezvani called Jones, Jones did not answer his telephone.

**62.** In another email to Rezvani, Jones requested an in-person meeting with Rezvani for December 8, 2017. Throughout the last week of November and the first week of December 2017, Rezvani worked in theAmplify's office, interacting with the team and clients, working on day-to-day business for theAmplify, and strategizing for the 2018 fiscal year.

**63.** On December 8, 2017, Jones and Emma Cookson, a Partner at YoJo, met with Rezvani and terminated him allegedly "for cause." Although Cookson and Jones terminated Rezvani for "cause" they offered Rezvani a different position with theAmplify on the condition he sign an agreement releasing any legal claims against

them, YoJo, and theAmplify. This offer shows that theAmplify did not terminate Rezvani "for cause." The "for cause" termination was a pretext for discriminating against Rezvani because of his anxiety, and another attempt to marginalize Rezvani.

**64.** After the termination, theAmplify never paid Rezvani for his accrued vacation time or all earned wages.

**65.** Rezvani still owns 45.85% of theAmplify and has a seat on the Board.

**66.** Jones acted with the intent to injure Rezvani and the shareholders of theAmplify, or, at the very least, with a willful and knowing disregard for their rights. Jones knew his conduct in increasing theAmplify's expenses and investing in competitor companies would devalue theAmplify and reduce shareholders' profits — including Rezvani's earn-out payments. He also knew of the probable consequences of his conduct and deliberately did not avoid those consequences, i.e., the financial downfall of theAmplify.

**67.** In recommending that Rezvani take leave for his anxiety, with the intention terminating Rezvani upon his return, and in terminating Rezvani for taking leave for his disability, Jones and theAmplify acted with the intent to injure Rezvani. At the very least, they acted with a willful and knowing disregard for Rezvani's right to a workplace free of discrimination based on his protected status as an employee with a disability.

## FIRST CAUSE OF ACTION

**(Rezvani Individually for Intentional Misrepresentation against Jones, YoJo, and Does 1 to 10)**

**68.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**69.** Jones — on behalf of himself and YoJo — made several false representations to Rezvani, to induce him to enter the Shareholder Agreement, the Employment Agreement, and the SPA (the "Agreements").

/ / /

**70.** Jones represented to Rezvani:

a. On September 22, 2015, at theAmplify's offices in Culver City, California, that Jones would grow theAmplify's revenues to $100,000,000.00 annually;

b. On October 6, 2015, that Jones would introduce Rezvani to dozens of major advertising brands and that he would put Rezvani in meetings with major advertising executives;

c. On October 28, 2015, that Rezvani would earn dramatically more than $30,000,000.00, personally, and that Rezvani would earn his maximum potential earnouts in 2016, 2017, and 2018;

d. On November 11, 2015, that Jones would help Rezvani with running all aspects of theAmplify, including assisting with operational support and finding the best talent in the industry to join theAmplify;

e. On January 22, 2016, in New York City, New York, that Rezvani would have access to YoJo's "Blood" system and this system would generate significant additional client leads for theAmplify; and

f. On April 7, 2016, that YoJo's support and the "Blood" system would ensure that the projected sales levels were met.

**71.** Jones knew his representations to Rezvani were false when he made them. At the very least, the Jones made the representations recklessly, without regard for their truth.

**72.** Jones intended for Rezvani to rely on his representations in deciding whether to sell 51% of theAmplify to YoJo.

**73.** Not knowing the representations to be false, and because Jones held himself out as an experienced and successful businessperson, Rezvani reasonably relied on his representations. Rezvani signed the one-sided Agreements and sold his majority interest in theAmplify to Jones' company YoJo.

**74.** Rezvani was harmed by Jones' false representations on YoJo's behalf.

**75.** Rezvani's reasonable reliance was a substantial factor in causing his harm.

**<u>SECOND CAUSE OF ACTION</u>**

**(Rezvani Individually for False Promise against Jones, YoJo, and Does 1 to 10)**

**76.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**77.** Jones, on behalf of himself and YoJo, made several false promises to Rezvani, to induce him to enter the Agreements:

a. On September 22, 2015, at theAmplify's offices in Culver City, California, Jones promised Rezvani he would grow theAmplify's revenues to $100,000,000.00 annually;

b. On October 6, 2015, Jones promised Rezvani he would introduce Rezvani to dozens of major advertising brands and that he would put Rezvani in meetings with major advertising executives;

c. On October 28, 2015, Jones promised to Rezvani that Rezvani would earn dramatically more than $30,000,000.00, personally, and that Rezvani would earn his maximum potential earnouts in 2016, 2017, and 2018;

d. On November 11, 2015, Jones promised to Rezvani that Jones would assist Rezvani with running all aspects of theAmplify, including helping with operational support and finding the best talent in the industry to join theAmplify;

e. On January 22, 2016, in New York City, New York, Jones promised Rezvani that Rezvani would have access to YoJo's "Blood" system and this system would generate significant additional client leads for theAmplify; and

f. On April 7, 2016, in response to Rezvani's concerns about theAmplify's projected sales, Jones promised Rezvani that YoJo's support and the "Blood" system would ensure that the projected sales levels were met.

**78.** Jones did not intend to engage in any conduct to meet the promises Jones made Rezvani.

**79.** Jones intended for Rezvani to rely on his promises in deciding whether to sell 51% of theAmplify to YoJo.

**80.** Not knowing the promises to be false, and because Jones held himself out as an experienced and successful businessperson, Rezvani reasonably relied on his promises. Rezvani signed the one-sided Employment Agreement, the SPA, and Shareholder Agreement (the "Agreements"), and sold his majority equity interest in theAmplify to Jones' company, YoJo. But Jones did not meet his promises to Rezvani.

**81.** Rezvani was harmed by Jones' false promises on YoJo's behalf.

**82.** Rezvani's reasonable reliance on Jones' false promises was a substantial factor in causing his harm.

## THIRD CAUSE OF ACTION

**(Rezvani Individually for Breach of Contract (the SPA) Against Defendants YoJo and Does 1 to 10)**

**83.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**84.** Rezvani and YoJo are parties to an agreement: the SPA.

**85.** Rezvani has substantially performed all obligations he owed YoJo under the SPA — except those he could not perform or was excused from performing because of YoJo's failure to perform its obligations.

**86.** YoJo failed to perform its obligations under Section 2.2(e) of the SPA by failing to timely provide Rezvani with income statements for 2016 and 2017 and pay Rezvani sufficient earn-out payments.

**87.** Rezvani was harmed by YoJo's failure to perform its obligations under the SPA. This failure was a substantial factor in causing Rezvani's harm.

**88.** Rezvani has suffered at least $7,500,000.00 in damages, in an amount to be proven.

**89.** Under the SPA, Rezvani is entitled to attorney's fees and costs.

**FOURTH CAUSE OF ACTION**

**(Rezvani Individually for Breach of The Implied Covenant of Good Faith and Fair Dealing (Under The SPA) Against Defendants YoJo and Does 1 to 10)**

**90.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**91.** Rezvani and YoJo are parties to an agreement: the SPA.

**92.** Rezvani has substantially performed all obligations he owed YoJo under the SPA — except those he could not perform or was excused from performing because of YoJo's failure to perform its obligations.

**93.** YoJo unfairly interfered with Rezvani's right to receive earn-out payments under the SPA by increasing theAmplify's sending and reducing its profit margin.

**94.** Rezvani was harmed by YoJo's acts and omissions that diminished the earn-out payments to Rezvani.

**95.** Rezvani has suffered at least $7,500,000.00 in damages, in an amount to be proven.

**96.** Under the SPA, Rezvani is entitled to attorney's fees and costs.

**FIFTH CAUSE OF ACTION**

**(Rezvani Individually for Breach of Contract (the Shareholder Agreement) Against Defendants YoJo and Does 1 to 10)**

**97.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**98.** Rezvani and YoJo are parties to an agreement: the Shareholder Agreement.

**99.** Rezvani has substantially performed all obligations he owed YoJo under the Shareholder Agreement — except those he could not perform or was excused from performing because of YoJo's failure to perform its obligations. But, YoJo failed to perform its obligations under the Shareholder Agreement.

**100.** YoJo breached Section 1.4 of the Shareholder Agreement by

a. hiring several employees with annual salaries of more than $80,000.00 without Rezvani's affirmative vote;

b. failing to issue a dividend for a significant period for 2016;

c. failing to declare a dividend or other distribution in the amount of a 100% annual distribution in 2017.

**101.** Rezvani was harmed by YoJo's failure to perform its obligations under the Shareholder Agreement. This failure was a substantial factor in causing Rezvani's harm.

**102.** Rezvani has suffered at least $5,843,137.25 in damages, for earn-outs from 2016 through 2018 and dividends, in an amount to be proven.

**103.** Under the Shareholder Agreement, Rezvani may have attorney's fees and costs.

**SIXTH CAUSE OF ACTION**

**(Breach of The Implied Covenant of Good Faith and Fair Dealing (Under the Shareholder Agreement) Against Defendants YoJo and Does 1 to 50)**

**104.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**105.** Rezvani and YoJo are parties to an agreement: the Shareholder Agreement.

**106.** Rezvani has substantially performed all obligations he owed YoJo under the Shareholder Agreement — except those he could not perform or was excused from performing because of YoJo's failure to perform its obligations.

**107.** But, YoJo unfairly interfered with Rezvani's right to receive the benefits of the Shareholder Agreement.

**108.** Rezvani was harmed by YoJo's conduct. This conduct was a substantial factor in causing Rezvani's harm.

**109.** Rezvani has suffered at least $5,843,137.25 in damages, for earn-outs from 2016 through 2018 and dividends, in an amount to be proven.

/ / /

**110.** Under the Shareholder Agreement, Rezvani is entitled to attorney's fees and costs.

**SEVENTH CAUSE OF ACTION**

**(Breach of Contract (the Employment Agreement) Against Defendants theAmplify and Does 1 to 50)**

**111.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**112.** Rezvani and theAmplify are parties to an agreement: the Employment Agreement.

**113.** Rezvani has substantially performed all obligations he owed theAmplify under the Employment Agreement — except those he could not perform or was excused from performing because of theAmplify's failure to perform its obligations.

**114.** However, theAmplify did not perform its obligations under the Employment Agreement.

**115.** TheAmplify the Employment Agreement by:

d. terminating Rezvani purportedly "for cause"— without proper "cause" for the termination, in violation of Section 4.4.3; and

e. failing to timely pay Rezvani all wages theAmplify owed him upon his termination, in violation of Section 4.3.2.

**116.** Rezvani was harmed by theAmplify's acts and omissions that breached the Employment Agreement. The failure was a substantial factor in causing Rezvani's harm.

**117.** Rezvani has suffered at least $7,500,000.00 in damages, including lost income, in an amount to be proven.

**118.** Under the Employment Agreement, Rezvani is entitled to attorney's fees and costs.

/ / /

## EIGHTH CAUSE OF ACTION

**(Breach of The Implied Covenant of Good Faith and Fair Dealing (Under the Employment Agreement) Against Defendants theAmplify and Does 1 to 50)**

**119.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**120.** Rezvani and theAmplify are parties to an agreement: the Employment Agreement.

**121.** Rezvani has substantially performed all obligations he owed theAmplify under the Employment Agreement — except those he could not perform or was excused from performing because of theAmplify's failure to perform its obligations.

**122.** However, theAmplify interfered with Rezvani's rights to receive benefits under the Employment Agreement. Specifically, theAmplify interfered with Rezvani's rights under the Employment Agreement by:

a. terminating Rezvani purportedly "for cause"— without proper "cause" for the termination, in violation of Section 4.4.3; and

b. failing to timely pay Rezvani all wages theAmplify owed him upon his termination, in violation of Section 4.3.2.

**123.** Rezvani was harmed by theAmplify's acts and omissions. The failure was a substantial factor in causing Rezvani's harm.

**124.** Rezvani has suffered at least $7,500,000.00 in damages, including lost income, in an amount to be proven.

**125.** Under the Employment Agreement, Rezvani is entitled to attorney's fees and costs.

/ / /

/ / /

/ / /

/ / /

## NINTH CAUSE OF ACTION

**(Rezvani Derivatively on behalf of theAmplify for Breach of Fiduciary Duty Against Defendants Jones and Does 1 to 50)**

**126.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**127.** As a Director of theAmplify, Jones owed theAmplify and its shareholders the fiduciary duties of care, good faith, and loyalty.

**128.** The duty of care required Jones to exercise such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

**129.** Through his various acts and omissions described in this Complaint, Jones failed to exercise care as an ordinarily prudent person in a like position would use under similar circumstances, when he unreasonably and unnecessarily increased theAmplify's expenses diminishing theAmplify's value as a company, and the equity interests of theAmplify's shareholders — including Rezvani.

**130.** The duty of good faith required Jones to discharge his duties to theAmplify and its shareholders in good faith.

**131.** Jones did not exercise his duties in good faith. Instead, Jones abused his position as a Director and took actions — including increasing expenses and investing in competitors — to theAmplify's detriment.

**132.** The duty of loyalty required Jones to act in the best interests of theAmplify and its shareholders.

**133.** Jones did not act in the best interests of theAmplify and its shareholders — and instead, acted to serve his interests — by investing in competing companies. Jones invested in competing companies to profit from the companies' success. But, these investments created competition for, and harmed the interests of theAmplify and its shareholders.

## TENTH CAUSE OF ACTION

**(Rezvani Individually for Discrimination in Violation of the Fair Employment and Housing Act against Defendants theAmplify and Does 1 through 50, Inclusive)**

**134.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**135.** On July 17, 2018, Rezvani timely filed a charge with the Department of Fair Employment and Housing (the "DFEH") against theAmplify for discrimination in employment. On July 17, 2018, the DFEH issued Rezvani a Right to Sue Notice against the theAmplify for violations of Fair Employment and Housing Act.

**136.** TheAmplify was and is an employer governed by the Fair Employment and Housing Act. At all times theAmplify has had over five (5) employees.

**137.** While employed by theAmplify, Rezvani had a disability or was perceived by theAmplify as having a disability: anxiety.

**138.** Rezvani's anxiety substantially limited one or more of his life activities.

**139.** Rezvani worked as theAmplify's CEO. He was qualified and able to perform the essential functions of his job with or without reasonable accommodation.

**140.** Despite Rezvani's exemplary performance as CEO, theAmplify terminated Rezvani after he returned from Disability Leave.

**141.** Rezvani is informed and believes that his anxiety, and related Disability Leave, were substantial motivating reasons for theAmplify's decision to terminate him from his position as CEO.

**142.** TheAmplify's termination of Rezvani's employment harmed Rezvani. And, theAmplify's conduct was a substantial factor in causing Rezvani's harm.

/ / /

/ / /

/ / /

/ / /

**ELEVENTH CAUSE OF ACTION**

**(Rezvani Individually for Wrongful Termination in Violation of Public Policy Against Defendants theAmplify and Does 1 through 50, Inclusive)**

**143.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**144.** It was the public policy of California, under the Fair Employment and Housing Act that employers not discriminate against employees with disabilities.

**145.** A substantial motivating factor in Rezvani's termination was his disability, anxiety. By terminating Rezvani, theAmplify violated California public policy.

**146.** TheAmplify's termination of Rezvani's employment harmed Rezvani. And, theAmplify's conduct was a substantial factor in causing Rezvani's harm.

**TWELFTH CAUSE OF ACTION**

**(Rezvani Individually for Failure to Pay Earned Wages Upon Separation of Employment Against Defendants theAmplify and Does 1 through 50, Inclusive)**

**147.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**148.** Rezvani worked for theAmplify.

**149.** TheAmplify owes Rezvani wages under the Employment Agreement and California law.

**150.** TheAmplify owes Rezvani at least $100,000.00 in unpaid wages.

**THIRTEENTH CAUSE OF ACTION**

**(Claim for Waiting Time Penalties Against Defendants theAmplify and Does 1 through 50, Inclusive)**

**151.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

/ / /

/ / /

**152.** Rezvani's employment with theAmplify ended on or about December 8, 2017, when theAmplify terminated him. TheAmplify owed Rezvani at least $100,000.00.

**153.** But, theAmplify did not pay Rezvani all wages owed to him as of that date.

**154.** Notably, theAmplify's failure to pay Rezvani these wages was willful.

**FOURTEENTH CAUSE OF ACTION**

**(Rezvani Individually for Securities Fraud Against Defendants Jones, the YoJo, and Does 1 to 50)**

**155.** Rezvani repeats and incorporates by reference into this cause of action the allegations set forth above as though set forth in this cause of action.

**156.** Jones, on behalf of himself and YoJo, misrepresented to Rezvani:

a. On September 22, 2015, at theAmplify's offices in Culver City, California, that Jones would grow theAmplify's revenues to $100,000,000.00 annually;

b. On October 6, 2015, that Jones would introduce Rezvani to dozens of major advertising brands and that he would put Rezvani in meetings with major advertising executives;

c. On October 28, 2015, that Rezvani would earn dramatically more than $30,000,000.00, personally, and that Rezvani would earn his maximum potential earnouts in 2016, 2017, and 2018;

d. On November 11, 2015, that Jones would help Rezvani with running all aspects of theAmplify, including assisting with operational support and finding the best talent in the industry to join theAmplify;

e. On January 22, 2016, in New York City, New York, that Rezvani would have access to YoJo's "Blood" system and this system would generate significant additional client leads for theAmplify; and

f. On April 7, 2016, that YoJo's support and the "Blood" system would ensure that the projected sales levels were met.

**157.** Jones knew his representations to Rezvani were false when he made them. At the very least, the Jones made the representations recklessly, without regard for their truth. Jones intended for Rezvani to rely on his representations in deciding whether to sell 51% of theAmplify to YoJo.

**158.** Jones' material misrepresentations to Rezvani induced Rezvani to sell securities to YoJo: 51% of theAmplify's shares. Not knowing the representations to be false, and because Jones held himself out as an experienced and successful businessperson, Rezvani reasonably relied on his representations. Rezvani signed the one-sided Agreements and sold his majority interest in theAmplify to Jones' company YoJo.

**159.** Rezvani was harmed by Jones' material misrepresentations. Rezvani has suffered significant economic loss, including the deprivation of timely dividend payments. Notably, YoJo has not paid Rezvani the balance $7,650.000 YoJo and Jones promised him in exchange for 51% of theAmplify.

**160.** YoJo and Jones' conduct caused Rezvani's economic loss.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

**161.** For general, special, compensatory, and consequential damages and lost profits in at least the sum of at least $7,650,000.00, with the exact amount to be proven at the time of trial;

**162.** For pre-judgment interest at the maximum legal rate in an amount to be proven at the time of trial;

**163.** For punitive damages according to proof;

**164.** For attorney's fees and costs; and

**165.** For statutory penalties under California Labor Code Section 203.

Dated: September 28, 2018 KUSHNER CARLSON, PC

By: s/ *Suren N. Weerasuriya*
MICHAEL B. KUSHNER
SUREN N. WEERASURIYA
PAUL H. DEESE
Attorneys for Plaintiffs

# VERIFICATION

I, Justin Rezvani, individually, and derivatively on behalf of Reach Labs, Inc. Dba Theamplify, a Delaware Corporation, verify under the penalty of perjury of the laws of the United States of America, that I have read the First Amended Complaint and its contents. I also verify that, to the best of my knowledge and recollection, the allegations in this First Amended Complaint are true and correct.

Executed this 28th day of September 2018, in Culver City, California.

DocuSigned by:
Justin Rezvani
48D4316A2CDE416...

JUSTIN REZVANI

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **VERIFIED FIRST AMENDED COMPLAINT** was served electronically to all parties on the above-captioned matter at the electronic address as disclosed with the Court, or by depositing in the U.S. Mail, postage pre-paid and properly addressed on September 28, 2018, or by hand delivery by leaving the same, at the addresses noted for the parties, disclosed below.

DATED: September 28, 2018 By: ___/s/ Diane D. Acuna___

## SERVICE LIST

**SERVED VIA THE COURT'S ELECTRONIC SERVICE:**

| **Defendants:** | **Represented by:** |
| --- | --- |
| YOU & MR. JONES, INC., a Delaware corporation; REACH LABS, INC. dba THEAMPLIFY, a Delaware Corporation. | Cynthia L. Jackson<br>DENTONS US LLP<br>1530 Page Mill Road<br>Suite 200<br>Palo Alto, CA 94304<br><br>Susan M. Walker<br>Norman Aspis<br>DENTONS US LLP<br>601 South Figueroa<br>Street Suite 2500<br>Los Angeles, CA 90017 |