| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Paul Deese | Cynthia Jackson |
| | Susan Walker |

**Proceedings:** DEFENDANT YOU & MR. JONES, INC.'S MOTION TO DISMISS PLAINTIFF JUSTIN REZVANI'S FRAUD CLAIMS (Dkt. 22, filed October 29, 2018)

DEFENDANT REACH LABS, INC. DBA THEAMPLIFY'S MOTION TO DISMISS PLAINTIFF REZVANI'S DERIVATIVE ACTION PURSUANT TO RULE 23.1 (Dkt. 23, filed October 29, 2018)

## I. INTRODUCTION

On July 19, 2018, plaintiff Justin Rezvani ("Rezvani"), individually and derivatively on behalf of Reach Labs, Incorporated (dba "theAmplify") filed this action against David Jones ("Jones"), You & Mr. Jones, Incorporated ("YoJo"), theAmplify, and Does 1 through 10, inclusive (collectively, "defendants"). Dkt. 1. Rezvani filed a first amended complaint on September 28, 2018, in which Rezvani alleges, individually, against defendants Jones, YoJo, and Does 1 to 10 (1) intentional misrepresentation, (2) false promise, (3) two breach of contract claims, (4) two claims for breach of the implied covenant of good faith and fair dealing, and (5) securities fraud, in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78(j)(b) and 17 C.F.R. § 240.10b-5. Dkt. 19 ("FAC").[1] Against theAmplify and Does 1 to 50, Rezvani alleges (1) a breach of

---

[1] Although the FAC alleges these claims against Jones, the alleged owner of YoJo, defendants contend that Rezvani has not yet served Jones in this action. MTD at 6, n2. The Court confirms that there is no proof of service of process for Jones.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

contract claim, (2) a breach of the implied covenant of good faith and fair dealing claim, (3) violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940 (West); (4) wrongful termination in violation of public policy; (5) failure to pay earned wages upon separation of employment; and (6) waiting time penalties. Finally, Rezvani derivatively, on behalf of theAmplify, also alleges a breach of fiduciary duty claim against Jones and Does 1 to 50.

On October 29, 2018, defendant YoJo moved to dismiss Rezvani's fraud-based claims for intentional misrepresentation, false promise, and securities fraud. Dkt. 22 ("MTD"). Defendant theAmplify also moved to dismiss Rezvani's derivative claim. Dkt. 23 ("Deriv. MTD"). Along with its motion, theAmplify included four sworn declarations to support theAmplify's position that Rezvani does not adequately represent the interests of theAmplify or the other shareholders. Dkt. 23-2; Dkt. 23-3; Dkt. 23-4; Dkt. 23-5. Rezvani filed an opposition to YoJo's motion to dismiss his fraud claims on November 9, 2018. Dkt. 24 ("Opp'n"). That same day, Rezvani also filed an opposition to theAmplify's motion to dismiss the derivative claim, dkt. 25 ("Deriv. Opp'n"), along with evidentiary objections to theAmplify's supporting declarations, dkt. 26 ("Deriv. Obj."). On November 19, 2018, YoJo filed a reply brief, in support of its motion to dismiss Rezvani's fraud-based claims. Dkt. 29 ("Reply"). TheAmplify filed a reply brief regarding the derivative claim on November 30, 2018. Dkt. 30 ("Deriv. Reply").

The Court held a hearing on December 17, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Rezvani alleges as follows.

### A. The Parties

Plaintiff Rezvani resides in Los Angeles County, California. FAC ¶ 2. TheAmplify, which is both a plaintiff and a defendant in this matter, is a California corporation which Rezvani founded in 2013. Id. ¶¶ 1, 15. TheAmplify is a leading marketing service that creates advertising content for large brands and uses a proprietary algorithm to measure and discover audiences on social media. Id. Rezvani today owns

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
|---|---|---|---|
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

45.85% of theAmplify.  Id. ¶ 5.  Defendant Jones is a natural person who owns defendant YoJo, a Delaware Corporation.  Id. ¶ 3.  YoJo owns 51% of theAmplify.  Id. ¶ 4.

### B.      Rezvani, Jones and YoJo Discuss a Stock Purchase

Rezvani founded theAmplify in 2013 after developing a proprietary algorithm that helps measure and discover audiences on social media.  Id. ¶ 15.  In 2015, Rezvani met Jones, who expressed an interest in purchasing a majority share in theAmplify, via his company YoJo.  Id. ¶¶ 17–18.  At that time, Rezvani owned over 98% of theAmplify, which Rezvani alleges was expected to earn approximately $5 million in revenue and $1.2 million in profit for 2015.  Id. ¶ 17.  Rezvani and Jones first had a telephone call on or about August 6, 2015, where they shared their respective visions for growing their companies, theAmplify and YoJo.  Id. ¶ 17.  On or about September 22, 2015, they met at theAmplify's office in Culver City, Los Angeles.  Id. ¶ 18.  At that time, Rezvani alleges that Jones told him that Jones could help grow theAmplify's revenue to $100 million.  Id. More specifically, Jones allegedly promised Rezvani that Jones' expertise in marketing, public relations, operations, and finance would help theAmplify.  Id. ¶ 19.  Jones also told Rezvani about a new business unit at Jones' company YoJo, called "Blood," which helped generate client leads.  Id. ¶ 20.  On October 6, 2015, Rezvani also accepted Jones' invitation to attend a meeting of advertising executives, after which Jones allegedly told Rezvani that he could help introduce Rezvani "to dozens of brands overnight."  Id. ¶ 21. Rezvani alleges that he was impressed by the expertise and connections that Jones presented, as well as Jones' representation about the projected $100 million in annual revenue.  Id. ¶¶ 19 – 20.  Rezvani alleges that he relied on the representations about what Jones could bring to theAmplify.  Id. ¶ 19.

In late October of 2015, following these initial meetings, negotiations began for YoJo's purchase of a controlling interest in theAmplify.  Id. ¶ 22.  On or about October 28, 2015, Jones and Rezvani discussed a deal structure for the purchase: Jones proposed that YoJo would purchase 51% of theAmplify, paying Rezvani for half of his shares upfront, followed by "earned payouts" in 2016, 2017, and 2018, provided that theAmplify achieved certain financial outcomes.  Id. ¶ 23.  Rezvani alleges that during their October 28, 2015 telephone call, Jones assured Rezvani that he would achieve his maximum potential payouts given the support and connections Jones and YoJo would provide.  Id. ¶ 24.  Specifically, Rezvani alleges that Jones said, "I have no doubt you can get potentially more money for your company in the short-term, [but] our model is one of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

long-term partnership where if we deliver what I think we are capable of together . . . you can earn dramatically more than $30,000,000." Id. ¶ 25. Although Rezvani proposed seeking an investor partner to raise more capital for theAmplify, Rezvani alleges that Jones informed Rezvani that Jones' and YoJo's substantial support was contingent on YoJo being the majority shareholder. Id. ¶ 26. Jones said that companies in which YoJo owned only minority stakes did not receive high-level support from YoJo. Id.

Initially, Jones and Rezvani disputed theAmplify's valuation: Rezvani asserted that it was valued at $42 million while Jones contended that it was worth $30 million. Id. ¶ 22. On or about November 11, 2015, however, Rezvani met with a Mergers and Acquisitions Specialist for YoJo, and they agreed on a $30 million valuation. Id. ¶ 27. They also agreed on general terms of the sale: in exchange of Rezvani's 51% equity interest, valued at $15,300,000, he would receive a down payment of $7,650,000 and earn-out payments of up to $7,650,000, dependent on theAmplify's profits in 2016, 2017, and 2018. Id. ¶ 28. Rezvani alleges that later that evening, he met with Jones, who stated that he would help grow theAmplify. Id. ¶ 29.

### C. The Parties Execute Agreements for the Stock Purchase

On or about December 16, 2015, Rezvani signed a letter of intent to sell a 51% equity interest in theAmplify to YoJo. Id. ¶ 30. On January 22, 2016, Rezvani and Jones met in New York City to further discuss the sale. Id. ¶ 31. Rezvani alleges that "Jones reiterated his promises he would be helping Rezvani in critical areas of the business, introducing him to brand representatives, and supplying internal operational support for theAmplify." Id. Jones also stated that YoJo's Blood unit would help generate client leads, and Rezvani alleges that this representation "was essential" to him. Id. Jones allegedly repeated his promises to help support theAmplify's growth on April 8, 2016, during a telephone call. Id. ¶ 33. As part of his due diligence, which Rezvani completed in April 2016, Rezvani developed sales projections for theAmplify based on Jones' promises of support and connections. Id.

As part of the terms of the sale, Rezvani told Jones that he wanted to maintain control of theAmplify's material business decisions and quotidian operations. Id. ¶ 34. Jones assured Rezvani of his continued control, and he drafted an Employment Agreement that maintained Rezvani as theAmplify's CEO, which Rezvani signed on or about April 25, 2016. Id. ¶¶ 34 – 36. On or about April 25, 2016, the parties also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

executed a Shareholder Agreement and a Stock Purchase Agreement reflecting the sale of the 51% stake. Id. ¶ 35. Under the agreements, there were three board seats, two to be selected by YoJo and one to be selected by Rezvani. Id. ¶ 39. Rezvani, Jones, and Antoni comprised the initial board. Id. Quorum required a majority, provided that the majority was comprised of Rezvani or his designee. Id. The Shareholder and Employment Agreements also provided that theAmplify's Board Of Directors required Rezvani's consent for (1) hiring an employee with an annual salary greater than or equal to $80,000; (2) a change in the dividend policy; (3) approval of material changes to the annual budget and business plan which indicate variations to the business lines or business model; and (4) any transaction that could potentially require the expenditure of more than $5,000 by and between theAmplify, a stockholder or any seller. Id. ¶ 37.

Rezvani alleges that the Shareholder Agreement was "unconscionable." He notes that the Agreement gave YoJo two of the three Board seats, and 51% of the equity interest in theAmplify, and "[n]otably, the [Stock Purchase Agreement] gave Rezvani $7,650,000 upfront and the rest . . . *if* theAmplify hit certain profit benchmarks." Id. ¶ 42. Rezvani further alleges that, "[b]y entering the Agreements—solely because he reasonably believed the promises Jones made him—Rezvani inadvertently gave up control of theAmplify." Id. ¶ 41.

### D. theAmplify's Post-Purchase Management and Performance

In 2016, theAmplify generated approximately $4,670,000 in revenue and $177,000 in profit. Id. ¶ 50. In 2017, the company generated revenue of approximately $5.7 million and profits of $700,000. Id. ¶ 53. To date, Rezvani alleges that he has only received roughly $80,000 for his 2016 earn-out payment, and nothing for 2017. Id. Rezvani asserts that his 2016 payment was delayed, and that he was required to inquire about it. Id. ¶¶ 51 – 53.

Rezvani also alleges that during the two years following YoJo's stock purchase, "Jones and YoJo degraded theAmplify for their self-interests, withdrawing cash from theAmplify and increasing spending." Id. ¶ 43. Specifically, Rezvani claims that Jones overspent in order to lower theAmplify's profits, which then minimized Rezvani's earned payouts. Id. Jones and YoJo also allegedly invested in direct competitors of theAmplify, which hurt theAmplify's sales. Id. ¶¶ 44, 47 – 48. Jones also allegedly stopped showing up to theAmplify's meetings and showed little interest in the company, although he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

"continued dismantling Rezvani's work." Id. ¶ 45. On information and belief, Rezvani also alleges that YoJo's Blood unit did not help theAmplify bring in new clients. Id. ¶ 49. In July of 2017, Jones and Rezvani met in-person in Santa Monica, California. At the meeting Jones told Rezvani that "he would no longer provide Rezvani with any more client introductions." Id. ¶ 56. Jones also allegedly told Rezvani "that their business relationship would work one of three ways, [Rezvani] could: (i) be a good soldier, (ii) work a few days a week at theAmplify; or (iii) leave his employment at theAmplify." Id. ¶ 55.

### E. Rezvani's Termination

Following the stock purchase, Rezvani alleges that his work responsibilities at theAmplify increased, and that he did not receive the expected help from Jones. Id. ¶ 57. In March of 2017, Rezvani began suffering from anxiety. Id. ¶ 58. On November 1, 2017, Rezvani had a telephone call with Jones in which Rezvani disclosed his anxiety about losing a key client. Id. ¶ 59. He also told Jones that he was seeing a therapist for work-related anxiety. Id. Jones allegedly told Rezvani that he was worried about him, and he suggested that Rezvani take time off. Id. Rezvani then took disability leave to cope with his stress and anxiety, during which he was treated for emotional distress and anxiety. Id. ¶¶ 59 – 60.

On November 21, 2017, Rezvani returned from disability leave and flew to Slovenia for business. Id. ¶ 61. He returned on November 25, 2017, and had a standing weekly business call scheduled with Jones for November 28, 2017. Id. Rezvani alleges that when he called Jones, however, Jones did not answer. Id. Instead, in an email to Rezvani, Jones requested an in-person meeting for December 8, 2017. Id. ¶ 62. At that meeting, Jones and another YoJo partner met with Rezvani and told him that he was terminated "for cause." Id. ¶ 63. Rezvani asserts that they offered Rezvani a different position at theAmplify if he signed an agreement releasing any legal claims against them, YoJo, and theAmplify. Id.

Rezvani alleges that the "for cause" termination was pretext for discriminating against Rezvani because of his anxiety. Id. He also contends that, "[i]n recommending that Rezvani take leave for his anxiety, with the intention [of] terminating Rezvani upon his return, and in terminating Rezvani for taking leave for his disability, Jones and theAmplify acted with the intent to injure Rezvani." Id. ¶ 67. More generally, Rezvani

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

alleges that "Jones acted with the intent to injure Rezvani and the shareholder of theAmplify, or, at the very least, with a willful and knowing disregard for their rights," namely with regard to the earned payouts.  Id. ¶ 66.  Rezvani claims that post-termination, theAmplify never paid Rezvani for his accrued vacation time and his earned wages.  Id. ¶ 64.  Despite termination as CEO, Rezvani maintains his 45.85% share in theAmplify and his board seat.  Id. ¶ 65.

### F. Demand Futility

Rezvani brings this lawsuit individually against Jones, YoJo, theAmplify, and Does 1 – 10.  He also alleges a derivative claim, on behalf of theAmplify, against Jones.  Id. ¶¶ 126 – 133.  Plaintiffs Rezvani and theAmplify allege that they are not obligated to make a demand on defendants Jones and Does 1 – 10 because it would have been, and would still be, futile.  Id. ¶ 11.  Plaintiffs claim that, while defendant have engaged in "substantial" misconduct and have breached their fiduciary duties, defendants will not admit to taking such wrongful actions.  Id. ¶¶ 11–12.  Instead, defendants have attempted to justify their misconduct and have "deprived theAmplify of the internal controls and systems for limited liability company management compliance."  Id. ¶ 12.  Plaintiffs assert that, because defendants face liability for the alleged breaches of their duties of care, good faith, and loyalty, defendants cannot objectively evaluate a pre-suit demand.  Id. ¶ 13.  Accordingly, plaintiffs contend that a demand on defendants would be futile, and the obligation is excused.  Id.  Plaintiffs also assert that this derivative action is not a collusive, initiated to confer jurisdiction that the Court would otherwise lack.  Id. ¶ 14.

## III. MOTION TO DISMISS REZVANI'S FRUAD CLAIMS

### A. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' "  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. DISCUSSION**

Rezvani alleges common law claims for intentional misrepresentation and false promise, as well as a claim for securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(j)(b) ("the Exchange Act") and Rule 10(b)(5) promulgated there under, 17 C.F.R. § 240.10b-5. Rezvani's claims are all premised on the following alleged misrepresentations:

    a. On September 22, 2015, at theAmplify's offices in Culver City, California, that Jones would grow theAmplify's revenue to $100,000,000.00 annually;

    b. On October 6, 2015, that Jones would introduce Rezvani to dozens of major advertising brands and that he would put Rezvani in meetings with major advertising executives;

    c. On October 28, 2015, that Rezvani would earn dramatically more than $30,000,000.00 personally, and that Rezvani would earn his maximum potential earnouts in 2016, 2017, and 2018;

    d. On November 11, 2015, that Jones would help Rezvani with running all aspects of theAmplify, including assisting with operational support and finding the best talent in the industry to join theAmplify;

    e. On January 22, 2016, in New York City, New York, that Rezvani would have access to YoJo's Blood unit and that this system would generate significant additional client leads for theAmplify;

    f. On April 17, 2016, that YoJo's support and the Blood unit would ensure that the projected sales levels were met.

FAC ¶¶ 70, 77, 156. Rezvani further alleges (1) that Jones knew the representations were false when he made them, (2) that "Jones intended for Rezvani to rely on his representations" when Rezvani decided to sell his shares of theAmplify, and (3) that Rezvani "reasonably relied on the representations" because Jones "held himself out as an experienced and successful businessperson." ¶¶ 71- 73, 79 – 80, 157 – 158. Rezvani

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

alleges harm, because, "[n]otably, YoJo has not paid Rezvani the balance $7,650,000 YoJo and Jones promised [Rezvani] in exchange for 51% of theAmplify." ¶ 159.

Defendant YoJo moves to dismiss Rezvani's claims for intentional misrepresentation, false promise, and securities fraud, pursuant to Rule 12(b)(6), on the grounds that Rezvani has not satisfied the heightened pleading standard necessary under Rule 9(b) and, with regard to the securities fraud claim, under the Private Securities Litigation Reform Act ("PSLRA"). MTD at 6. YoJo contends that each of Rezvani's fraud-based claims fail because the alleged misrepresentations constitute opinions, which are not actionable as fraud, and because Rezvani fails to allege sufficient facts to plead falsity or scienter. Mot. at 11, 18 – 20. Defendant also argues that Rezvani's promissory fraud claim is defeated by the Rezvani's acknowledgement that defendant partially performed. Id. at 23. Finally, defendant argues that Rezvani fails to allege facts showing justifiable reliance, or loss causation between Rezvani's injuries and the alleged representations. Id. at 24 – 27. In response, Rezvani contends that he adequately pleads securities fraud because he "alleges promises of specific acts by Jones . . . [a]nd none of them are mere forecasts." Opp'n at 11. He also argues that Jones' conduct after the stock purchase demonstrates that he never intended to follow through on his promises. Id. at 12.

### 1. Rezvani's Securities Fraud Claim

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Rule 9(b) governs fraud claims, including securities fraud actions. Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014). A federal securities fraud suit is also subject to the demanding pleading requirements of the PSLRA. Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A plaintiff must also plead falsity, and courts "treat the falsity and scienter analyses as 'a single inquiry, because falsity and scienter are generally inferred from the same set of facts.'" Fodor v. Blakey, No. CV 11-08496 MMM (RZx), 2012 WL 12893985, at *9 (C.D. Cal. Feb. 21, 2012) (citing Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001)). The Ninth Circuit, in interpreting the PSLRA, has clarified that only "[a] defendant who makes misrepresentations or omissions 'either intentionally or with deliberate recklessness' acts with scienter." Oregon Pub. Employees Ret. Fund, 774 F.3d at 607 (quoting In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005)). Thus, to satisfy PSLRA, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." Ronconi, 253 F.3d at 432. To constitute a "strong inference" of scienter, as required by the PSLRA, "an inference . . . must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1051–52 (9th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007)). The court makes its assessment by assessing the facts alleged in the complaint collectively. Id.

Certain statements are not actionable under the PSLRA because they fall within its "safe harbor" provision. Specifically, the safe harbor provision provides that defendants shall "not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that" the statement is accompanied by meaningful cautionary statements or was made without actual knowledge that the statement was false or misleading. 15 U.S.C. § 78u-5(c); see also In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Forward-looking statements include statements of "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 78u-5(i)(1)(B). In addition, statements are not actionable if they are "generalized, vague and unspecific assertions,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

constituting mere 'puffery' upon which a reasonable consumer could not rely." Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003) (citing Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc., 911 F.2d 242 (9th Cir. 1990)). "'Puffing' concerns expressions of opinion, as opposed to knowingly false statements of fact." Oregon Pub. Employees Ret. Fund, 774 F.3d at 606. In contrast, "[s]tatements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations." Id.

YoJo's alleged misrepresentations can be grouped into two categories: (1) those pertaining to theAmplify's future revenues and Rezvani's future earnings, FAC ¶ 156 a, c, and (2) those pertaining to actions that Jones and/or YoJo would take in order to support theAmplify and introduce Rezvani to new clients following YoJo's stock purchase, id. ¶ 156 b, d – f. Both are discussed in turn.

### a. Alleged Misrepresentations Regarding Future Revenues and Earnings

Rezvani cannot allege securities fraud based on Jones' statements that Jones believed he could grow theAmplify's revenues to $100,000,000.00, or that Rezvani could earn more than $30,000,000. See FAC ¶ 156 a, c. As a preliminary matter, Rezvani's first amended complaint expressly acknowledges that these statements constitute Jones' opinion about potential outcomes—not verifiable objective facts. Rezvani quotes Jones as having stated, "*if* we deliver what *I think* we are capable of together . . . you *can* earn dramatically more than $30,000,000." FAC ¶ 25 (emphasis added). The PSLRA's safe harbor provision also exempts these statements from liability because they are forward-looking, and the Court cannot find, based on Rezvani's allegations, that Jones spoke despite having actual knowledge that the statements were false. While Rezvani baldly alleges that "Jones knew his representations to Rezvani were false when he made them," this does not suffice. FAC ¶ 157. Under the PSLRA, "[i]t is not sufficient simply to allege that a statement was false." Ronconi, 253 F.3d at 431. Instead, Rezvani "must allege falsity in light of "specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." Id. at 432; see also In re Daou Sys., Inc., 411 F.3d at 1021 (finding that defendants' statements fell within the safe harbor because "plaintiffs fail to provide sufficient facts to demonstrate that defendants had actual knowledge that these optimistic statements were false and misleading when made").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

Relatedly, Rezvani does not plead facts that establish a "strong inference" of scienter because, despite Rezvani's claim that Jones intentionally misled Rezvani, the specific facts alleged do not corroborate that conclusion. Assessing the complaint as a whole, Rezvani's allegations give rise to an inference that Jones and YoJo anticipated that acquiring a majority stake in theAmplify would grow their business, as they believed that there were synergies between the marketing and technology companies. See, e.g., FAC ¶¶ 17 –18, 25 (describing Jones' goals and expectations of growing YoJo and theAmplify). As YoJo argues, YoJo's ultimate upfront investment of over $ 7 million in theAmplify illustrates the sincerity of that belief. Mot. at 20. While Jones' projections about the fruitfulness of this investment may have been incorrect, the Ninth Circuit has been clear that, "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." Ronconi, 253 F.3d at 432. "The PSLRA's safe harbor is designed to protect companies and their officials from suit when optimistic projections of growth in revenues and earnings are not borne out by events." In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1142 (9th Cir. 2017). Accordingly, Jones' projections for theAmplify and Rezvani personally cannot provide the basis for Rezvani's securities fraud claim.

### b. Alleged Misrepresentations Regarding Jones' and YoJo's Future Support of theAmplify

Jones' alleged misrepresentations about providing future operational support to theAmplify and facilitating client connections also cannot provide the basis for Rezvani's securities fraud claim because the statements fall within the safe harbor, and Rezvani does not allege a "strong inference" of scienter. Here, too, Rezvani identifies forward-looking statements about the future conduct of management, which can fall within 10(b)'s safe harbor. And here, too, Rezvani pleads no facts indicating that, at the time the statements were made, they were spoken with actual knowledge that they were false. Rezvani alleges that following the stock purchase Jones hurt theAmplify's profits by overspending and by investing in competitors. FAC ¶¶ 43 – 44. However, this occurred *after* the statements were made. At the times Jones allegedly represented his plans of working closely with Rezvani and theAmplify, Jones met repeatedly with Rezvani, discussed a vision for growing their companies, and even took Rezvani to a meeting with advertising executives. FAC ¶¶ 17 – 18, 21. Additionally, Rezvani's allegations suggest that in the months immediately following the stock purchase, Jones *did* introduce Rezvani to clients—making good on his alleged promises. Rezvani expressly claims that,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

in July 2017, Jones told Rezvani that "he would *no longer* provide Rezvani with any more client introduction." FAC ¶ 56 (emphasis added). This statement implies that between April 2016 and July 2017, the fifteen months following the stock purchase, Jones provided Rezvani with client connections. This conduct supports an inference that Jones intended to act in accordance with his alleged promises, not that he harbored intentions to renege.

Certainly, while one could speculate that Jones knowingly made false representations about supporting theAmplify—perhaps in order to close the deal—Rezvani does not allege facts which indicate that this inference is "at least as compelling as any opposing inference of nonfraudulent intent." WPP Luxembourg Gamma Three Sarl, 655 F.3d at 1051–52 (quoting Tellabs, Inc, 551 U.S. at 314). Accordingly, Rezvani fails to state a securities claim based on Jones' alleged statements about proving operational support and client connections for theAmplify.

In sum, "[c]alling executives bad managers, or bad forecasters, does not plead fraud, except where it can be shown that they knew or were deliberately reckless in disregarding the misleading nature of their forecasts." Ronconi, 253 F.3d at 437. That showing is made where plaintiffs plead specific facts, perhaps based on interviews with company insiders or by producing contradictory due diligence reports, demonstrating scienter and falsity at the time the statements were made. See, e.g., In re Quality Sys., Inc. Sec. Litig., 865 F.3d at 1139 (finding that plaintiffs adequately pled a 10(b) claim where the complaint alleged, *inter alia*, facts about the defendants' knowledge drawn from interviews with defendants' employees). That showing has not been made with regard to Jones' statements about what he believed theAmplify could achieve with YoJo's investment and support. Accordingly, the Court **DISMISSES** Rezvani's securities fraud claim.

### 2. Rezvani's Remaining State Law Claims

The Court dismisses Rezvani's federal securities fraud claim for failure to state a claim under the heightened pleading standard of Rule 9(b) and the PSLRA. This claim is the sole basis for this Court's subject-matter jurisdiction over this case. The Court declines to exercise supplemental jurisdiction over Rezvani's remaining state law claims. 28 U.S.C.A. § 1367 (West) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06244-CAS (Ex) | Date | December 17, 2018 |
| Title | JUSTIN REZVANI ET AL v. DAVID JONES ET AL. | | |

### IV. MOTION TO DISMISS REZVANI'S DERIVATIVE CLAIM

Defendant theAmplify also moves to dismiss Rezvani's ninth claim, the derivative action. Deriv. Mot. at 1. However, having declined to exercise supplemental jurisdiction over Rezvani's state law claims, including the derivative claim, the Court **DENIES** this motion *as moot*.[2]

### V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant YoJo's motion to dismiss Rezvani's securities fraud claim, set forth in the fourteenth claim for relief, *with leave to amend*. Plaintiff's amended complaint is due within **twenty-one (21) days** of the date of this order. The Court **DENIES** *as moot* defendant theAmplify's motion to dismiss the derivative action.

IT IS SO ORDERED.

| | 00 : 04 |
|---|---|
| Initials of Preparer | CMJ |

---

[2] In support of its motion to dismiss Rezvani's derivative claim on behalf theAmplify, theAmplify included four sworn declarations to support its position that Rezvani does not adequately represent the interests of theAmplify or other shareholders. See Dkt. 23-2; Dkt. 23-3; Dkt. 23-4; Dkt. 23-5. Rezvani objects to 89 statements in the declarations. Deriv. Obj. The Court has denied theAmplify's motion as moot, and therefore **DENIES** the evidentiary objections as moot, as well.